Good morning, ladies and gentlemen. Counsel for appellants, if you have saved time for rebuttal, or even if you haven't checked in, either way, please let us know as you start your argument because it helps us to keep track. You may call the first case. Case number 162342, Commercial Law Corporation v. FDIC. Oral argument not to exceed 15 minutes per side. Mr. Irwin for the appellant. May it please the Court. Good morning, Your Honors. I am Al Fowler Irwin, appearing on behalf of the Appellants Matter Commercial Law Corporation. I have reserved five minutes for rebuttal of my time. Your Honors, the issues presented to this Court can be broken down into two different sections. Number one, the claim for attorney's fees, interest, and costs. Number two, was COCs or Commercial Law Corporation secured interest preserved at the reversal of the summary judgment, removing those secured interests. This is the second appeal before this Court. The first appeal dealt with a motion for summary judgment that was granted based upon the claim that there was no written contract that was required under the statute for the services rendered. At that time, we had argued and the panel agreed and the decision was rendered that for trade services, there was not the requirement for a written contract at that time. One of the factors that arose at the time of the first appeal was the national policy of the FDIC and that policy included for their regional offices, when do you pursue a written contract and the requirements of a written contract. Specifically, is there a written contract, are there references in the bank records and in the minutes. That policy gave an example of an attorney who had performed a significant amount of work for a client. There was not a written contract. The national policy of the Washington Office of the State is that in that case, you are to proceed without looking for or requiring that there is a written contract, but more or less proceed on the fact that if you feel that the written contract is important, then you are required to get or receive approval from the national office that that is your contention and that is how you plan to proceed. In this matter, a written contract was sought. Litigation was protracted over a significant period of time for this written contract and that written contract, actually the lack of that written contract was the basis of the summary judgment in the district court. The FDIC regional office has never explained why it decided to deviate from the national policy or explain or show that it actually received the approval to deviate and to proceed looking for this written contract. On the issues of attorney's fees, interest and cost, if I look at cost, if I present it to the court, the issue of cost is nothing more than a mathematical clarification. There was an error in the adding of the cost, so that is not a disputed issue. The issue of attorney's fees centers around the claim of the appellant that attorney's fees should be awarded under the Equal Access to Justice Act and also for discovery malfeasance. There are two factors under the Equal Access to Justice Act that has been brought up in the district court. Number one, is the FDIC, as a receiver, a governmental agency? And we cited in a brief why there is not only precedent, but I think that the language states that in whatever capacity, FDIC is a governmental agency. The second issue and one of the issues raised is whether you can sue the FDIC in its capacity of receiver. We cited in our brief that yes, you can sue pursuant to the language in the Federal Deposit Insurance Act, specifically under Section 1819. Under the Equal Access to Justice Act, there are two different provisions that have to be addressed if you are trying to claim attorney's fees under a provision. Under 2412B, it requires that in most situations that the American rule has to apply, i.e., that each party is responsible for their own attorney's fees. I presented in our brief that we feel that there is an exception and we pointed out that exception for bad faith. Again, the basis of our argument is that bad faith was exercised on the part of the regional office because the regional office deviated from its national policy, didn't ask for the permission, and if that deviation had not have taken place, the lawsuit that was filed, there was proof that work had been done, there wasn't a requirement for a written contract. You said there is not a requirement for a written contract? No, I am saying that under the claim that was brought by the FDIC, there is not a written contract requirement for a trade services provided to a bank that was part of it. Okay, but that is forgetting the substance of your claim, not forgetting the attorney's fees. Under 2412B, what do you need? Is bad faith alone enough? Under common law, yes, I am saying that bad faith is enough. If you look at the position that was taken by the appellee, FDIC, then I think bad faith is enough because without that pursuit, this litigation would not have been protracted for as long as it was. Secondly, if we look at the claim that was being made, the claim was, was the work ever performed? And under the claim that was filed in the court under a stated account, it became stated, it started as an open account, the only claim that you could have made is that there were no services provided, the amount was set unless you filed a counter affidavit and that wasn't filed. And so under B, yes, I am saying that as long as we could show bad faith, and we are saying that the deviation not only meets the requirement of bad faith under sub B, but also it should not provide the substantial justification that is required under sub part D. And what about the argument that B only applies when it is not expressly prohibited by statute and 1821 would prevent attorney's fees against a receivership? Your Honor, if we go back and look at 1821 and the provision there and what it applies to, and it actually applies to unsecured creditors, and as I pointed out, there are really two issues before this court. Number one, was the original claim secured or unsecured? And we argue that at all times it was a secured claim. If it was a secured claim, those provisions that were cited by the appellee were for all unsecured claims. And I understand the theory behind having the proration among unsecured creditors. You want to make sure that no one has showed favoritism. But in the case of a secured creditor, you look to the collateral. And even the lower court at the time before we were going to trial, the district court, in the show cause order that was dated March 7, 2016, that's Record Entry 249 at 5123, said that the FDIC had agreed that if commercial law had prevailed on its attorney's fees, then the district court would consider its liens. Now, this case is sort of tangled because the original issue was based upon attorney's fees, interest, and costs. We learned later that there's an argument being made that, well, you didn't pursue a stay or you lost your secured interest. And our argument in our brief is that, no, this case was reversed. And so at this time, we feel that we've made enough proof to show bad faith and lack of substantial justification. In closing, I would just say that we've also pointed out that interest would be allowable under, again, under the Sue and 2B2 provision, and that's under 12 U.S.C. 1819. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. May it please the Court. Duncan Stevens on behalf of the Federal Deposit Insurance Corporation as receiver for Home Federal Savings Bank. The district court correctly denied commercial law corporation an attorney's fee award under the Equal Access to Justice Act because such an award was barred by statute and multiple statutory provisions. At any rate, even if not barred by statute, the award was not warranted on the merits under the Equal Access to Justice Act because the FDIC acted in good faith and its position was substantially justified. And so is the distinction that sub D requires your adversary to show no substantial justification and it's B that would require them to show bad faith? That's right. We agree with that assessment. That's the correct understanding of the showing. We don't think either showing has been made here. Let me start, if I may, with the statutory bars. And Section 1821.I.2 codifies the principle of pro rata distribution of receivership assets. There is a priority scheme for payment of receivership assets when the FDIC takes over a failed bank. At the top of the priority scheme is administrative expenses of the receivership and then deposit insurance claims, et cetera, down through the bottom, which is unsecured creditors. And as my colleague indicated, the principle is that no unsecured creditor can receive proportionally more than another unsecured creditor. Courts have recognized that this principle, codified in 1821.I.2, bars attorneys' fee awards to unsecured creditors. Because if one unsecured creditor received an additional payment on its claim from the receivership assets and other unsecured creditors didn't get a special payment, it would be preferential. It would be special treatment. So it's well understood that fee awards are not permissible for unsecured creditors. Now, CLC argues that it was a secured creditor, but it was not for several reasons. First, there was never a valid security agreement between Commercial Law Corporation and the bank. The purported security agreements were executed, and a forensic exam of CLC's data showed this, were executed after the bank failed by someone who had no power to bind the bank at that time because the bank didn't exist. The FDIC had taken over. Furthermore, the purported liens securing these agreements were not recorded until after the bank failed. And the FDIC, when it's appointed as a receiver, becomes the senior lien creditor of the bank and assumes a senior position to all unperfected, all unrecorded liens. And these liens were not recorded, and this Court recognized that in RTC v. Cheshire Court. And even if they were validly executed and validly recorded liens, they were taken in contemplation of the bank's insolvency, and thus were unenforceable against the FDIC under Section 1821 E-12. And even if all that weren't true, these liens were voided. In February 2014, when the District Court entered judgment, CLC sought no stay of that judgment. With no liens against these properties that the FDIC had secured, CLC had no right to use them. And even if the FDIC had been holding them for almost five years, the FDIC went forward with the sale of those properties. There was no statutory impediment to the FDIC going forward. CLC took no steps to stop it. And ever since that sale went through, CLC, assuming it was once a secured creditor, became an unsecured creditor and has been ever since. So CLC was an unsecured creditor of this receivership and is not entitled to any kind of preferential payments. Let me ask you one question. Maybe I'm missing one part of this. So they have some type of judgment receiver certificate, something that says that they were entitled to $176,000 or so in legal fees. Now, a good bit of their brief seems to be arguing or complaining about the status or how much of that $176,000 they would get. Your brief focuses strictly on the attorney's fees aspect. Where do they stand with respect to the $176,000? Is that still tied up below or did they get a pro rata share? No, Your Honor. We don't dispute that if there were sufficient assets to make payments to unsecured creditors, they would get a pro rata payment on the $176,000. In fact, there were not enough assets in this receivership to make any payments to unsecured creditors. So they hold a receivership certificate that would entitle them to payment if assets materialized and there were assets at that level of the waterfall. But as it stands, there are no assets and the FDIC legally can't make payments. In terms of then what is legitimately before us, is it only the attorney's fees or is it also before us whether they are a secured or unsecured creditor with respect to where they stand in what you call the waterfall? What's before the court is whether they're entitled to attorney's fees for the work done during the litigation. Now, their status as a secured creditor affects this 1821 I-2 issue. And if the court believed that they were a secured creditor, that would set aside our defense based on 1821 I-2. We still have other reasons why the district court did not err in not making the attorney's fee award. In terms of where they stand in the distribution, is that something that we should or must rule on and say, yes, they're unsecured so there's no money for them or they're secured or is that really not part of the appeal? Well, it's part of the appeal because it bears on our 1821 I-2 argument. It's not in our view strictly necessary for the court to reach that issue because the court can affirm on other grounds. If the court wants to reach the 1821 I-2 defense, as it were, then the court would need to reach that issue. So that's a long way of saying it pertains to the payment of attorney's fees. It would also pertain to the underlying entitlement to payment. But let me speak to a separate issue that may make it unnecessary for the court to reach the secured creditor question, which is Section 1825B-3 bars, fines, and penalties against the FDIC as receiver. An EJF fee award is a penalty. An EJF fee award is intended to punish the government for taking a position that was in bad faith or not substantially justified. We obviously believe that we did act in good faith, that we were substantially justified, but the point of EJF is to deter the government from taking those types of positions. So Section 1825B-3 bars such an award. Now, CLC has argued that it only applies to taxes, but that's not true. Courts in many settings have applied 1825B-3 to non-tax penalties, penalties that have nothing to do with taxes. In particular, the Ninth Circuit, in a case called Monrad v. FDIC, which is at 62 F-3-11-69, applied this provision to the late payment of severance pay, penalties for late payment of severance pay. The Second Circuit applied this outside the tax context. The National Loan Investors v. Town of Orange, that's 204 F-3-407, where the issue was sewer charges. So this is not limited to taxes. And the Court in Monrad even noted that the heading for Section 1825B-3, when it was first enacted, read exemptions from taxation. And that was in 1989. In 1991, it was amended to simply read exemptions. So that, the Ninth Circuit acknowledged, indicated Congress's intent that 1825B-3 not simply bar tax penalties, but bar penalties more generally. And even if an attorney's fee award were not barred by statute here on the merits under the EJ, it would not be justified, because the FDIC acted in good faith, and its position was substantially justified. Now, CLC has argued as to the bad faith factor that the FDIC deviated from its national policy. It did not. The national policy regarding the assertion of the Dentsch Doctrine and the statutes reflecting the Dentsch Doctrine permitted the FDIC to assert its position. It asserted the doctrine, quote, I'm quoting the policy statement, when there is clear evidence, when there is not clear evidence that the goods and services were received. It went on to say, when there is no evidence that goods or services were received by the failed institution, the defenses may be asserted. There were real questions about whether these services were in fact received by the bank before it failed. The invoices that purported to reflect these services, that same forensic examination showed, were backdated. They were created after the bank failed. That in itself created a real question about whether these services were rendered. And furthermore, CLC has argued that the Washington office didn't approve the assertion of the Dentsch Doctrine and the statutes reflecting the doctrine, but the Washington office did approve. There's nothing in the record indicating that it didn't. And the bare fact that the Washington office appeared before this court on the prior appeal and asserted the Dentsch Doctrine showed that the Washington office was fully on board here. So there was no deviation from any national policy. And there was certainly nothing in this case indicating what is required for bad faith, which is the assertion of a meritless position when the party asserting it knows it's meritless and it's asserted for an improper purpose. That's what this court required in the Griffin Industries case, and none of that has been shown here. Furthermore, the FDIC, so that speaks to 2412B. As to 2412D1, lack of substantial justification, the district court did not abuse its discretion, its broad discretion, in finding the FDIC's position substantially justified. The FDIC had multiple substantially justified legal and factual defenses. The first, obviously, is the Dentsch Doctrine and the statutes reflecting that doctrine, where the FDIC argued that the lack of a written agreement made any purported agreement for unpaid legal bills unenforceable. Now, this court obviously disagreed, and we understand that, but this court's prior opinion made it very clear that it was a very close question that had never been previously addressed by this court. The FDIC had other defenses as well. As I've alluded to, it was not clear that the services hadn't, in fact, been rendered. The invoices purporting to reflect those services were backdated. Furthermore, there was an agreement between the bank, an unwritten agreement between the bank and commercial law, indicating that any billing for any attorney's fees would be deferred until the bank's capital ratio improved. Well, the bank's capital ratio didn't improve. It continued to deteriorate from the time of that agreement until the bank failed. So that indicated that there was conditioned precedent to the bank's liability for any legal fees, and that conditioned precedent never occurred. It never went into effect. So that, independently, was a valid legal defense that the FDIC had, and the FDIC was substantially justified in not paying it. And that defense ultimately failed in the sense that the district court did award the $176,000. What happened here, Your Honor, is that the FDIC told the district court that it had paid commercial law via a receivership certificate. So the district court didn't reach the merits of those defenses. The parties were going into trial at the time. Your position was that this was a settlement, so you didn't need to defend it? It was in the nature of a settlement because it was a full payment on the claim. There was nothing more for commercial law to receive, and indeed the district court rendered judgment based on the payment of that receivership certificate. Is there a distinction between payment and satisfaction? Because they never got any money, they got a receivership certificate in satisfaction of that claim, as I understand this record. That's right. They got a receivership certificate, which is legally all they could receive as an unsecured creditor. Right, but that payment ordinarily would indicate that you actually got the money, or at least some of it. But here, this was just a, you get the money if there ever is any. But that is in satisfaction of the claim, as I understood the district court to have ruled. That's right. That is what the district court held. The district court entered judgment based on the satisfaction. Judgment saying that, and that judgment established that this was, because this had been satisfied now by a receivership certificate, that this is an unsecured creditor. Right. Was that judgment ever appealed?  No, the only appeal entered was from the denial of attorney's fees under the AJA. So there was no appeal from the entry of judgment. So why isn't this question of secured versus unsecured creditor just gone? We agree with you that the question of whether there was a valid satisfaction of judgment, that is not, that is gone. That is not before the court. The question of whether commercial law is a secured creditor bears on the 1821 I-2 issue, but it's not otherwise relevant to what's before the court. My time is up. Has the district court ruled on whether they're a secured or unsecured creditor, or the bankruptcy court? The district court did not rule on that issue, except insofar as it agreed with the FDIC on the 1821 I-2 issue. But it didn't address it directly. My time is up. I would just say in closing that the district court correctly denied a prejudgment interest award because the FDIC's sovereign immunity to prejudgment interest awards has not been waived. The existence of a sue-and-be-sued clause is not sufficient to waive that sovereign immunity, as the Supreme Court recognized in Library of Congress v. Shaw. Thank you, Your Honor. Thank you, counsel. Rebuttal? Your Honor, just a few quick points. First of all, under 2412D, the burden is not on CLC or commercial law to prove substantial justification. As the gun case that was opined in this circuit, F763, Fed 3rd, 494, and F763, Fed 3rd, 494. The burden is actually on the government. Your Honor, one of the things I wanted to go back and address, because there were a lot of arguments that were made regarding factors or facts in which there were never any facts presented or any facts proven. When this matter came before the district court, it came before the district court because FDIC wanted, and their claim was, we issued a certificate, we want you to dismiss the complaint. This was about three days before trial. FDIC had the opportunity to go to trial and to prove these items that they stated. They did not go to trial because the forensic evidence that they had referred to was excluded by the court. There was no proof of any backdating. They could not use any of that evidence. That was an argument that was made, but that was never presented to the court. In this matter, they said that there was a question of whether any work had been performed. My firm had represented Home Federal Savings Bank for over 20 something years, and not only had represented them, but had attended meetings with the Office of Thrift Supervision, also the FDIC, since it was a Federal Savings Bank. OTS, or Office of Thrift Supervision, was a primary regulator, and FDIC was secondary. So there was a number of conversations regarding converting this mutual bank to a stock bank, and I took part in all those discussions, and I represented the bank in all of them. So when they are saying that there was a good faith argument that could be made that there was no evidence that work had been performed, I had been representing the bank for 20 something years. My name was all over the place. Everybody there knew me. All the officers knew me, all the directors, and the members of the board all testified that I had performed the work. There's also a question of, well, is there going to be any distribution, or were there any assets to distribute? This bank was never liquidated. So this bank came in, another bank came in, took over. There was never any payouts to any depositors. There was never a payout to any creditors. I don't know how many other creditors other than myself had filed a claim. So there was never anything paid out. When this question was addressed below to FDIC, what is the pot, how many claims do you have? There's no evidence that was ever presented. They said, oh, go look at the website. There was a certain amount pledged by FDIC to cover failure, but this bank has been operating now for, I'd say, another 10 years. There's never been a problem with that. There was an argument made that the liens were backdated forensic evidence. There was no forensic evidence of that, any evidence that they attempted to introduce for that was excluded by the district court. The filing and contemplation of insolvency, this court considered that same argument on the first appeal and said there was no proof, there was no facts that had been presented. So FDIC had the opportunity when this case was remanded. All the arguments that are being made today could have been made then, and they chose not to. They chose to try to get this matter dismissed. The district court judge would not dismiss it, said no, you're going to have to file a judgment. And in that opinion, and in the judgment, he also stated that these were issues that were still open. Now the question of whether the issue of whether the claim was secured or unsecured, this matter came up when this appeal was pending. And I saw what had been written. So I raised it in my brief, and I said this is an issue because they're saying that it had been removed. And the basis of their argument was, well, you didn't obtain a stay, so you lost your secured interest. I said, no, did the court below consider it? No, it did not. But they proceeded, and the argument, well, not the argument, but the judgment indicated that this is a judgment. It didn't speak to whether it was secured or unsecured, but the briefs and the motions that were filed spoke to that issue. That's why I raised it on appeal at this time, because I didn't want to lose the issue. My time is up, thank you.